UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY REED WILLIAMS, <br>     Plaintiff, <br> v. <br> ENHANCED RECOVERY COMPANY, LLC, <br>     Defendant. | Case No. 18-cv-03699-HSG <br><br> **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. No. 56 |

Pending before the Court is a motion for summary judgment filed by Defendant Enhanced Recovery Company, LLC ("ERC") against Plaintiff Tracy Reed Williams, briefing for which is complete. Dkt. Nos. 56 ("Mot."), 59 ("Opp."), 60 ("Reply"). Having carefully considered the parties' arguments, the Court **GRANTS** Defendant's motion.[1]

## I. BACKGROUND[2]

Defendant ERC is a debt collector. *See* 15 U.S.C. § 1692a(6) (defining "debt collector"); Reply at 1 (conceding that ERC's status as a debt collector is undisputed). On December 7, 2016, one of ERC's customers—Comcast Cable Communications, LLC ("Comcast")—placed an account with ERC for collection bearing the name Tracy Reed Williams as the account holder ("the Subject Account"). Dkt. No. 57-1 ("Davis Decl.") ¶ 6. The Subject Account's balance was $1,235.63. *Id.* ERC subsequently sent collection letters to Plaintiff in December 2016 and February 2017. *Id.* ¶ 9. ERC also unsuccessfully attempted to reach Plaintiff by telephone. *Id.*

---

[1] The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). The Court agrees with Plaintiff's counsel, who—in requesting to appear telephonically at the hearing on this motion—stated that "the issues presented in [the motion] are not complex or unusual." *See* Dkt. No. 64.
[2] Except as where noted otherwise, relevant facts are undisputed.

1  ERC ultimately reported the Subject Account to consumer reporting agencies such as Trans
2  Union, first on February 12, 2017, and periodically thereafter. *Id.* ¶¶ 10–11.

On June 22, 2018, ERC received notice that Plaintiff filed the present suit against it and immediately ceased any collection activity related to the Subject Account. *Id.* ¶ 13. Within days, ERC instructed all consumer agencies with which it then furnished credit information to delete its reporting of the Subject Account. *Id.* ¶ 14.

Plaintiff does not claim that ERC engaged in any unlawful activity after June 22, 2018. Nor does Plaintiff allege that she notified any third party, such as Comcast, that she disputes the debt underlying the Subject Account. Plaintiff contends, however, that her counsel mailed a letter to ERC disputing the Subject Account on April 9, 2018. Opp. at 3; *id.* Ex. 1 ("the Dispute Letter"). ERC maintains that it never received the Dispute Letter. Davis Decl. ¶¶ 16–17. ERC thus did not communicate to any consumer reporting agencies that the Subject Account was disputed in the period between April 9, 2018 and June 22, 2018, including when ERC reported the Subject Account to Trans Union on May 6, 2018. *See* Dkt. No. 59-5 (Plaintiff's Credit Report, as of May 22, 2018).

## II.  LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* The Court views the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

The moving party bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a

2

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party will bear the burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find in its favor. *Celotex Corp.*, 477 U.S. at 325. In either case, the movant "may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1105. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102–03.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, courts enter summary judgment in favor of the movant. *Celotex Corp.*, 477 U.S. at 323.

**III.     DISCUSSION**

Plaintiff brings two causes of action against ERC: (1) violation of the Fair Debt Collection Practices Act ("FDCPA" or "the Act"), 15 U.S.C. §§ 1692–1692p; and (2) violation of California's Rosenthal Fair Debt Collection Practices Act ("the Rosenthal Act"), Cal. Civil Code §§ 1788–1788.33. *See* Dkt. No. 1 ("Compl.") ¶¶ 16–31. The parties agree that Plaintiff's Rosenthal Act claim is derivative of, and thus rises and falls with, Plaintiff's FDCPA claim. *See* Compl. ¶ 29 (alleging a violation of the Rosenthal Act due to ERC's violation of the FDCPA); Mot. at 6–7.

3

**A. FDCPA**

The FDCPA prohibits debt collectors from communicating "to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). Section 813(c) of the FDCPA, 15 U.S.C. § 1692k(c), provides what is known as a bona fide error defense, under which "[a] debt collector may not be held liable" for actions brought under the Act if the debt collector "shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." "[T]o qualify for the bona fide error defense, the defendant must prove that (1) it violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011); *see* 15 U.S.C. § 1692(k)(c). And the Supreme Court has explained that a "bona fide error" means a clerical or other administrative mistake: "[T]he broad statutory requirement of procedures reasonably designed to avoid 'any' bona fide error indicates that the relevant procedures are ones that help to avoid errors like clerical or factual mistakes." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587 (2010).

Section 1692k(c) "explicitly places the burden on the debt collector to prove that it acted unintentionally and had procedures in place to avoid such an error." *Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355, 363 (9th Cir. 2015). And the Ninth Circuit has cautioned that the defense is a "narrow exception to strict liability under the FDCPA," and thus defendants bear the burden of proof at summary judgment. *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1177 (9th Cir. 2006).

**B. Analysis**

ERC moves for summary judgment on two grounds: (1) there is no evidence ERC knew or should have known that Plaintiff disputed the Subject Account because ERC never received the Dispute Letter; and (2) even if there were a dispute of material fact concerning ERC's receipt of the Dispute Letter, any failure by ERC to flag the Subject Account's debt as disputed would fall

within the statutory liability exemption for bona fide errors. Mot. at 6–16. Plaintiff counters that a genuine dispute of material fact exists concerning whether Defendant received the Dispute Letter. Opp. at 8–9. As to ERC's bona fide error defense, Plaintiff argues that Defendant's factual contention that it did not receive the Dispute Letter precludes the affirmative defense's invocation. *Id.* at 10–11.

The Court finds that ERC has carried its burden to establish an entitlement to the bona fide error defense, and the Court thus does not consider whether there is a material dispute of fact concerning whether ERC received the Dispute Letter. ERC's motion and supporting declaration describe at length the redundant policies and procedures in place at ERC to "properly retrieve[], process[], and record[] all correspondence[s] sent by, or on behalf of, account holders." Mot. at 3. Specifically, only two designated ERC employees have authority to retrieve United States Postal Service ("USPS") mail from the post office. *Id.* (citing Davis Decl. ¶ 22). And the USPS post office maintains a list of the designated employees, such that mail is only released to proper personnel. *Id.* (citing Davis Decl. ¶ 22). Further, keys for retrieving mail from the post office are securely maintained at ERC's offices by management-level employees, and the keys "may be checked out only by authorized employees, which process is logged, and the keys are returned to [management] upon return from the post office." *Id.* (citing Davis Decl. ¶ 22).

Once collected from the post office, mail "is opened and sorted in a secure area at ERC," and mail not deemed payments is reviewed by ERC's "correspondence mail team." *Id.* at 3–4 (citing Davis Decl. ¶¶ 22–23). ERC represents that under its policies and procedures, such team members systematically review correspondence to identify the correct account associated with the correspondence, including by reviewing the "name, address, social security number, creditor name, account balance, file numbers, account numbers, etc." *Id.* at 4 (citing Davis Decl. ¶ 25). If the team member is unable to identify the relevant account, the correspondence is immediately provided to management, which undertakes a second review, to locate the proper account. *Id.* (citing Davis Decl. ¶ 26). In the event that second review fails, ERC "will use the return address in the correspondence to mail a letter requesting additional information from the sender to make another attempt to identify any relevant collection accounts in ERC's account management

5

system." *Id.* (citing Davis Decl. ¶ 26). Any correspondence for which an associated account is not found is logged. *Id.* (citing Davis Decl. ¶ 26). If an associated account is found and the correspondence indicates that there is a dispute, the account is flagged as in "dispute" status which, among other things, ensures that any reporting to consumer reporting agencies will reflect the disputed status. *Id.* at 4–5 (citing Davis Decl. ¶ 27).

All told, ERC's policies and procedures are designed "to ensure that every individual piece of correspondence received by ERC is associated with the correct account, and that ERC takes all appropriate actions with respect to the account based on the substance of the correspondence." *Id.* at 3 (citing Davis Decl. ¶ 21). And the policies and procedures are memorialized in duplicative written policies that were in effect at times relevant to this case. *Id.* at 5 (citing Davis Decl. ¶¶ 30–33). Despite these policies and procedures, ERC represents that it has no record of receiving the Disputed Letter or any other correspondence from Plaintiff concerning the Subject Account. *Id.* (citing Davis Decl. ¶ 8). And based on ERC's review of the Disputed Letter, ERC contends that "information included [therein] would have been sufficient for ERC to identify the Subject Account." *Id.* (citing Davis Decl. ¶ 37). In turn, if ERC received the Dispute Letter and employees complied with ERC's policies in procedures, any subsequent periodic reports to consumer reporting agencies should have reflected the disputed status.

Plaintiff does not dispute (1) the adequacy of ERC's policies and procedures, (2) that compliance with the polices and procedures as described above would have prevented the alleged FDCPA violation, (3) that mishandling of a correspondence despite these policies and procedures would be unintentional, or (4) that an ERC employee's accidental mishandling of a correspondence despite these policies and procedures would constitute a clerical—and thus bona fide—error. Instead, Plaintiff's sole response is that the bona fide error defense "does not come into play, because ERC claims that it never received the letter in the first place." Opp. at 3. The Court disagrees. It is entirely logical that a debt collector like ERC would, after failing to find any record of receiving a correspondence such as the Dispute Letter at issue here, invoke the bona fide error defense, provided the company had proper policies and procedures to prevent the alleged FDCPA violation. And nothing in the FDCPA's text precludes debt collectors from relying on the

6

bona fide error defense in the alternative.

Because debt collectors like ERC may assert the bona fide error defense in the alternative, the real question is whether ERC has carried its burden of proving the defense applies. And the Court finds that ERC has carried its burden. To start, and even assuming Plaintiff sent the Disputed Letter to ERC, the alleged FDCPA violation resulted either from an error with the post office, such that ERC never received the correspondence, or an ERC employee mishandling the letter at some point between retrieving the letter from the post office and the point at which employees review the letter. Either way, there is no evidence that such an error was intentional. *See McCollough*, 637 F.3d at 948. Nor is there any indication that such a mistake—if attributable to ERC—would be anything other than a clerical mistake. *See Jerman*, 559 U.S. at 587. Finally, as detailed in length above, ERC has adequately demonstrated that its redundant policies and procedures were reasonably adapted to avoid such mishandling of correspondence. *See McCollough*, 637 F.3d at 948.

For these reasons, the Court finds that ERC, as the party that would bear the burden of proving the bona fide error defense at trial, has shown that no reasonable trier of fact could find against it as to this defense. *See Celotex Corp.*, 477 U.S. at 325. And given that ERC has carried its burden, Plaintiff was required to "identify with reasonable particularity the evidence that precludes summary judgment," but failed to do so. *See Keenan*, 91 F.3d at 1279. The Court accordingly will enter summary judgment in favor of ERC. *Celotex Corp.*, 477 U.S. at 323.

## IV. CONCLUSION

The Court **GRANTS** Defendant's motion for summary judgment against Plaintiff. The clerk is directed to enter judgment in favor of Enhanced Recovery Company, LLC and close the file.

**IT IS SO ORDERED.**

Dated: 8/14/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge